# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00420-CV

### In the Matter of J. A. B.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-29,744, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## MEMORANDUM OPINION

J.A.B. appeals the juvenile court's order modifying disposition and committing him to the Texas Youth Commission for a four-year determinate term. He contends that the court's decision to commit him to the TYC rather than continuing him in a local residential program is unsupported by evidence and an abuse of discretion. We find this contention to be without merit and affirm the court's order.

J.A.B. was adjudicated delinquent based on a finding that he committed aggravated assault with a deadly weapon. The juvenile court's initial disposition placed J.A.B. on determinate-sentence probation in the custody of the Intermediate Sanction Center. One of the conditions of probation was that J.A.B. successfully complete the ISC residential program. Two months later, the State moved to modify disposition, alleging that J.A.B. had been unsuccessfully discharged from the ISC program. At a hearing on the motion, J.A.B. admitted this violation, and the juvenile court found that he had violated a lawful condition of his probation. After hearing

testimony by J.A.B.'s probation officer, the court modified disposition to commit J.A.B. to the TYC. *See* Tex. Fam. Code Ann.§ 54.05(j) (West 2008). J.A.B. does not challenge the juvenile court's determination that he violated the terms of his probation. He challenges only the decision to commit him to the TYC.

Juvenile courts have broad discretion in determining the proper disposition of children who have engaged in delinquent conduct, and we review a court's decision to see whether it acted in an unreasonable or arbitrary manner. *In re A.I.*, 82 S.W.3d 377, 379-80 (Tex. App.—Austin 2002, pet. denied). An order modifying disposition to commit a juvenile to the TYC must reflect that the juvenile court found that (1) it is in the child's best interests to be placed outside the child's home, (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return home, and (3) the child, in the home, cannot be provided the care, support, and supervision needed to meet the conditions of probation. Tex. Fam. Code Ann. § 54.05(m) (West 2008).[1]

The modification hearing began on May 5, 2009. Aaron Gilland testified that he had been J.A.B.'s probation officer since J.A.B. entered the ISC in March. Gilland testified that J.A.B. has "numerous issues of stealing food, anger issues, some defiance towards staff." J.A.B. had been discharged from the ISC after he broke a fire sprinkler head and flooded his room and other portions of the residential unit. Gilland understood that J.A.B. had done this because he was angry at being disciplined for stealing food from the cafeteria. Gilland testified that J.A.B. was subject to outbursts

---

[1] J.A.B. refers us to the statement of purpose and interpretation of the juvenile justice code. Tex. Fam. Code Ann. § 51.01 (West 2008). The purposes of the code expressed in section 51.01 are reflected in the findings required by section 54.05(m).

of violent and threatening behavior, that "ISC is just not giving [him] what he needs," and that J.A.B. needed the more structured environment of the TYC. Gilland testified that the ISC or some other residential program was inappropriate for J.A.B., and expressed the probation department's belief that commitment to the TYC was in the best interest of J.A.B. and the community.

During cross-examination, Gilland testified that J.A.B. had been living in the juvenile detention facility since his discharge from the residential program, and that "he's doing a lot better in detention." While living in detention, J.A.B. had not displayed the anger and defiance toward staff that had resulted in his removal from the residential setting.

Gilland also prepared a written update to the probation department report that had been submitted to the juvenile court in February 2009, at the time of J.A.B.'s initial adjudication and disposition. *See id*. § 54.05(c). The earlier report detailed J.A.B.'s drug abuse problems, prior referrals to juvenile court, and commitments to the TYC. The report stated that both of J.A.B.'s parents, who separated when he was seven, have criminal records and histories of drug and alcohol abuse. The update detailed the conduct and attitude problems that had resulted in J.A.B.'s discharge from the residential program. It stated that J.A.B. had received psychiatric treatment, but he refused to take his prescribed medications. Although J.A.B. was legally in the custody of his father, his father was "unable to make contact with [J.A.B.]" because he was in an inpatient drug rehabilitation program. J.A.B.'s mother was living in Rockport and had attended inpatient drug treatment. She had been "very communicative with the department throughout the course of [J.A.B.'s] stay in ISC residential."

3

At the conclusion of Gilland's May 5 testimony and after hearing arguments by counsel, the juvenile court recessed the hearing until June 16 and ordered J.A.B. back to the ISC residential program. The court admonished J.A.B., "[Y]ou can tell me what you want. You can tell me in two ways; with your words or with your actions between now and then. Do you want that or not? Because those are my two options; it's that or TYC. And I'll give you whichever you want."

When the hearing resumed on June 16, Gilland testified that J.A.B. "had done better [in the ISC] than he did before," but "he's not had a clean slate." Since being returned to the residential program in May, there had been incident reports for cursing, "being disgruntled about a small portion of food," slapping another resident on the back of the head (which Gilland suggested was "kind of playing"), and being disrespectful to staff. Nevertheless, it was now the probation department's recommendation that J.A.B. remain in the ISC and not be committed to the TYC. Gilland testified that he would like to see J.A.B. moved to the substance abuse unit, "where he needs to be anyway." Gilland reported that J.A.B.'s mother had been speaking to J.A.B. by telephone and wanted him to move to Rockport to live with her, but Gilland testified that the probation department did not believe that J.A.B. was ready to be released. J.A.B.'s father had been "trying to rekindle a relationship with [J.A.B.] and coming to the parenting group." Gilland testified, "[J.A.B.] has been at TYC twice. We don't feel at this time like TYC is going to solve his problem. We would like to do it here. We think that he has it in him, you know. But [he] is going to have to want to change."

There is no question that the evidence supports the juvenile court's determination that reasonable efforts had been made to eliminate the need for removing J.A.B. from his home, but that his parents could not provide the support and supervision he needs and that it was in his best interest

4

to be placed outside his home. *See id.* The question presented is whether the court abused its discretion by committing J.A.B. to the TYC rather than keeping him in the ISC residential facility.

J.A.B. contends that the juvenile court's decision was an abuse of discretion in light of Gilland's June 16 testimony. He argues that on June 16, he was in a secure residential facility and doing so well that the probation department had withdrawn its earlier recommendation that he be committed to the TYC. J.A.B. argues that the goal of the juvenile justice system is treatment and rehabilitation in the least restrictive environment appropriate to the child's circumstances.[2] He urges that no evidence was adduced at the June 16 hearing to show that commitment to the TYC would improve on the treatment and rehabilitation he was receiving at the ISC. To the contrary, Gilland expressed the opinion that the TYC could not help J.A.B.

We must review the juvenile court's decision in light of all the evidence it had before it. The evidence reflects that J.A.B. had been consistently undisciplined and uncooperative during his initial stay in the ISC, and that both his behavior and his attitude improved when he was transferred to the more structured environment of the juvenile detention facility. Despite the court's warning that this was his last chance to avoid TYC commitment, J.A.B.'s disciplinary problems resumed when he was returned to the ISC on May 5, albeit at a less serious level. In light of this

---

[2] Section 51.01, cited by J.A.B., expresses a preference for keeping a delinquent child in a family environment in the custody of his parents, a preference that is also reflected in section 54.05. *See* Tex. Fam. Code Ann. §§ 51.01(5), 54.05(m) (West 2008). J.A.B. cites no statutory authority for his assertion that when a child must be removed from his home, a local residential institution is to be preferred over the TYC.

evidence, the court's decision to commit J.A.B. to the TYC rather than continue him in the ISC program, while undoubtedly difficult, was neither unreasonable nor arbitrary. No abuse of discretion is shown.

The order modifying disposition and committing J.A.B. to the Texas Youth Commission is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 19, 2010